UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| MELISSA TOWNSEND, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 1:12-CV-371 JD |
| CITY OF FORT WAYNE, *et al.*, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

On September 19, 2012, Plaintiff Melissa Townsend filed a complaint against the City of Fort Wayne, Officer Ian Wolfe, Sergeant Tom Strausborger, and Officer Gregory Addison, alleging that she was unlawfully arrested. [DE 1]. She sued the officers in their individual capacities pursuant to 42 U.S.C. § 1983 for violating her rights under the Fourth Amendment, and she sued the City for false arrest and false imprisonment under Indiana law based on the acts of its police officers. The defendants have now moved for summary judgment, and that motion has been fully briefed. [DE 32, 33, 39, 40, 44]. For the reasons that follow, summary judgment is GRANTED as to the claims against Sergeant Strausborger and Officer Addison, but is DENIED as to the claims against Officer Wolfe and the City of Fort Wayne. The defendants have also moved to strike Ms. Townsend's supplemental Rule 26(a)(1) disclosure as untimely, and that motion is DENIED.

**I. FACTUAL BACKGROUND**

While visiting her mother at East Central Towers apartment complex on the afternoon of July 13, 2011, Ms. Townsend was approached by a little girl who was screaming for help because someone was fighting her mother. [DE 32-1, 39-1]. Ms. Townsend and several other people followed the girl and found two women, Yvette Howard and Lynette Faye Calligan,

engaged in a physical altercation. [*Id.*] The women were on the ground and Ms. Howard was on top of Ms. Calligan, holding her down. [*Id.*] Ms. Townsend shouted at them to stop fighting, and when they did not, she and two maintenance men broke up the fight by getting in between the women to separate them. [*Id.*] Ms. Townsend then returned to her mother's apartment. [*Id.*]

Several police officers responded to the scene, including Officer Ian Wolfe, Officer Gregory Addison, and Sergeant Thomas Strausborger, of the City of Fort Wayne Police Department. [DE 32-2, 32-4]. When Officer Wolfe arrived, he made contact with Ms. Howard, who had called the incident into the police. [De 32-2]. She told him that Ms. Calligan attacked her and that she took Ms. Calligan down to the ground to restrain her. [DE 39-4]. According to Officer Wolfe's report, she also "stated that another female, later identified as Melissa Townsend, witnessed the event and pulled her off of Calligan." [*Id.*] Ms. Howard further told Officer Wolfe that she wanted to make a citizen's arrest of Ms. Calligan. [*Id.*] Having learned that police officers were investigating the incident, Ms. Townsend then returned to the scene. [DE 39-1]. Officer Addison arrived at around the same time, and he and Officer Wolfe located Ms. Calligan and arrested her for battery. [DE 39-4].

According to Ms. Townsend, Officer Wolfe approached her, told her that she was a witness to the altercation, and asked her for her name, address, and social security number. [DE 39-1]. Ms. Townsend gave him her name and address, but told him that she was not comfortable saying her social security number out loud in public, as there were a number of people nearby and she had once been the victim of identity theft. [*Id.*] She offered to write the number down, but Officer Wolfe instead asked her for an identification card. [*Id.*] Ms. Townsend did not have her driver's license with her, but provided Officer Wolfe with her Ivy Tech student identification

card, which had her picture on it. [*Id.*]. Officer Wolfe was not satisfied, and told Ms. Townsend that he was arresting her and that she was "going to jail." [*Id.*]

Officer Wolfe's version of this encounter is somewhat different. Officer Wolfe recounts that Ms. Townsend approached him, explained that she saw the women fighting, and said that she physically pulled Ms. Howard off of Ms. Calligan. [DE 39-4]. According to his affidavit, "Townsend said that she grabbed Howard while Howard was punching Calligan." [DE 32-2]. Officer Wolfe then "advised [Ms. Townsend] that because she was involved in the altercation, she needed to provide her identification to [him]." [*Id.*] Ms. Townsend initially resisted, then gave Officer Wolfe her name. [DE 39-4]. Officer Wolfe told her that she had "to either tell [him] her date of birth, social security number, and address or to provide [him] with a state issued identification card." [*Id.*]. Ms. Townsend looked through her purse and handed Officer Wolfe a student identification card that contained her name but no other personal identification information. [*Id.*]. Officer Wolfe told her the he needed to see a legitimate state-issued identification, and when she failed to comply, he "advised her that she was being placed under arrest for Refusal to Identify," and he placed her in handcuffs. [*Id.*] Officer Addison appears to have been interviewing Ms. Calligan during this exchange. [DE 32-4, 39-4]

Sergeant Strausborger then arrived at the scene and spoke with Officer Wolfe. [DE 39-4]. Officer Wolfe states that he "explained the situation to Sgt. Strausborger, who then spoke with Townsend and advised her that she was required to provide identification." [*Id.*] Sergeant Strausborger described his conversation as follows: "Officer Wolfe asked me whether he could arrest someone who had been involved in a battery because that person refused to provide identification to Officer Wolfe. I informed Officer Wolfe that if the individual was involved in an altercation, that individual could be arrested for refusing to provide information to Officer

3

Wolfe." [DE 32-3]. Officer Wolfe then walked Ms. Townsend to his squad car and transported her to the Allen County jail. [DE 39-4]. Meanwhile, the officers released Ms. Calligan at the scene, as Ms. Howard no longer wished to press charges. [*Id.*]. Ms. Townsend was detained at the jail for about eight hours and was charged with failing to identify herself to officers, in violation of Indiana Code § 34-28-5-3.5. [DE 39-1]. The charges were dropped the following day. [*Id.*].

## II. STANDARD OF REVIEW

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Kerri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in its favor. *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). Thus, in responding to Defendants' motion for summary judgment, the Court must credit

Plaintiff's version of the facts. In so doing, the Court does not vouch for the truth of those facts, but merely uses them to determine whether a genuine issue for trial exists. *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044–45 (7th Cir. 2002).

However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Finally, the fact that the parties have cross-filed for summary judgment does not change the standard of review. *M.O. v. Ind. Dep't of Educ.*, 635 F.Supp.2d 847, 850 (N.D. Ind. 2009). Cross-motions are treated separately under the standards applicable to each. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008).

### III. DISCUSSION

Ms. Townsend's complaint asserts a claim under federal law against each of the officers, including Officer Wolfe, Officer Addison, and Sergeant Strausborger, for arresting her without probable cause in violation of the Fourth Amendment. She also asserts a claim for false arrest and false imprisonment under Indiana law against the City of Fort Wayne, as the employer of the officers. The defendants have moved for summary judgment as to all claims, and the Court considers each defendant in turn.

**A.      Officer Wolfe**

Ms. Townsend's federal claims arise under 42 U.S.C. § 1983, which provides a cause of action against any person who, while acting under color of state law, deprives an individual "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). Ms. Townsend asserts that the officers deprived her of her right under the Fourth Amendment to be free from "unreasonable . . .

seizures." U.S. Const. amend. IV. An arrest (which is a form of seizure) is reasonable if it is based on probable cause that the individual has committed an offense, so to succeed on this claim, Ms. Townsend must show that the officers lacked probable cause for her arrest. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) ("In order for [the plaintiff] to prevail on his § 1983 false arrest claim, he must show that probable cause for his arrest was lacking."); *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause.").

A police officer has probable cause for an arrest if, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). In determining whether probable cause exists, a court does not evaluate "the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006); *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). Likewise, it is well-established that "the officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

To determine whether probable cause to arrest existed, the Court must consider the elements of the law allegedly violated. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). Here, the defendants claim that Ms. Townsend was arrested for violating Indiana Code § 34-28-5-3.5, which provides:

> A person who knowingly or intentionally refuses to provide either the person's:
>> (1) name, address, and date of birth; or

6

> (2) driver's license, if in the person's possession;
>
> to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.

Ind. Code § 34-28-5-3.5. To have committed this offense, Ms. Townsend must have been stopped "for an infraction or ordinance violation" in the first place, and must also have knowingly or intentionally refused to provide the listed identification.

The Court finds that the officers lacked probable cause to believe that Ms. Townsend committed this offense for two reasons. First, the facts, when viewed in the light most favorable to the non-movant, Ms. Townsend, show that she did not refuse to provide the required identification. Officer Wolfe asked Ms. Townsend for her "name, address, and social security number," and she gave him her "name and address." [DE 39-1 ¶ 8]. Notably, the statute only required Ms. Townsend to provide her "name, address, and date of birth" upon request, *not* her social security number. Ind. Code § 34-28-5-3.5. Thus, even if offering to write the number down instead of saying it out loud could be considered refusing to provide it (which is doubtful), this could not constitute a violation of this statute, since it does not require her to provide her social security number in the first place. Further, the statute only criminalizes refusing to provide a driver's license if it is "in the person's possession," and the defendants have articulated no basis to believe that Ms. Townsend's driver's license was in her possession. [DE 39-1 ¶ 10].

Second, the defendants have failed to show that Ms. Townsend was stopped "for an infraction or ordinance violation." An individual's mere presence at the scene of an infraction or ordinance violation does not satisfy this requirement. *Starr v. Indiana*, 928 N.E.2d 876, 880 (Ind. Ct. App. 2010) (holding that a passenger's arrest under this section was invalid even though the car in which he was travelling was lawfully stopped, since officers did not have reason to believe that the passenger had committed an infraction or ordinance violation himself). Rather, an officer

7

must at least have reasonable suspicion that a particular individual committed an infraction or ordinance violation before that individual is required to identify herself upon threat of criminal prosecution. *Id.*; *Earles v. Perkins*, 778 N.E.2d 1260, 1266 (Ind. Ct. App. 2003) (finding that probable cause did not exist for this offense where the "undisputed facts reveal no infraction or ordinance violation"). Here, the defendants repeatedly assert that Ms. Townsend was "involved" in a physical altercation (by which they apparently mean that she witnessed a fight and pulled the combatants apart), but they never identify what infraction or ordinance violation this constituted. Without knowing what infraction or ordinance violation Ms. Townsend was stopped for, the Court cannot evaluate whether the officers had reasonable suspicion for it, so the defendants have forfeited the argument that Ms. Townsend was lawfully stopped.[1]

The defendants hint at other points in their briefing that Officer Wolfe may have had probable cause to arrest Ms. Townsend for some other offense. They even note, correctly, that "an arrest must be upheld as long as it is supported by probable cause for **any** offense, regardless of the offense ultimately charged." [DE 44 p. 5]. Again, however, their briefing never indicates *what* other offense Officer Wolfe had probable cause to believe Ms. Townsend committed or how her conduct met the elements of that offense. Though they repeatedly state that she was "involved" in a fight, there is no offense under Indiana law for mere "involvement" in a fight, as defendants use that term. In her response brief, Ms. Townsend speculates that the defendants may have been referring either to battery or disorderly conduct, but a plaintiff should not have to

---

[1] Perhaps the defendants meant to argue that Ms. Townsend was stopped for committing battery, but even if that was the case, battery is not an infraction or ordinance violation in Indiana. Infractions and ordinance violations are punishable only by monetary fines and their enforcement is authorized under the "Civil Procedure" title of the Indiana Code, Ind. Code § 34-18-5-4, whereas battery is a criminal offense punishable by imprisonment. § 35-42-2-1. Since this provision only applies where the individual was stopped for "an infraction or ordinance violation," Ms. Townsend could not have violated this law if she was only stopped for committing battery. § 34-28-5-3.5

speculate at the basis for a motion for summary judgment, nor is it the Court's responsibility to identify any other offense for which probable cause may have existed. Accordingly, the Court finds that the defendants have forfeited this argument. *Duran v. Sirgedas*, 240 F. App'x 104, 116–17 (7th Cir. 2007) (holding that where the movant failed to cite the alternative offenses for which probable cause existed and identify the elements of those offenses, the movant forfeited the argument).

Officer Wolfe next argues that even if probable cause did not exist for Ms. Townsend's arrest, he is entitled to summary judgment under the doctrine of qualified immunity. Government officials are entitled to immunity from civil liability under § 1983 for their actions unless their conduct violates any clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, an officer is immune from suit unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). In the context of a false arrest claim, this means that an officer is entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed," or in other words, if the officer had "arguable probable cause." *Fleming*, 674 F.3d at 880 (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 2998)) (internal quotation marks omitted).

Here, when viewing the facts in the light most favorable to Ms. Townsend, the Court cannot conclude that Officer Wolfe had arguable probable cause to believe that Ms. Townsend

violated the failure-to-identify statute. The statute imposes criminal liability if a person refuses to provide their "name, address, and date of birth." Ind. Code § 34-28-5-3.5(a). Of those, Officer Wolfe requested Ms. Townsend's name and address, and she provided those. Officer Wolfe also asked Ms. Townsend for her social security number, and Ms. Townsend refused to state that out loud, though she offered to write it down. Even assuming that a reasonable officer could have believed that this constituted "refusing to provide" the information, no reasonable officer could have believed that this violated the statute, since the statute imposes no obligation whatsoever to provide a social security number. Granted, qualified immunity applies whether an officer's mistake is one of law or of fact, but the error in either case must be reasonable, *Pearson*, 555 U.S. at 232, and there is no reasonable interpretation of this statute under which it could be read to require a person to provide their social security number.

Finally, the statute only criminalizes a person's failure to produce their driver's license if it is "in the person's possession." Here, there is no evidence from which a reasonable officer could have believed that Ms. Townsend had her driver's license in her possession, and Officer Wolfe has not suggested otherwise, so Ms. Townsend could not have violated this prong of the statute. Accordingly, the Court finds that no reasonable officer in this situation could have believed that Ms. Townsend had refused to provide the information required by the statute. Therefore, Officer Wolfe did not have arguable probable cause to arrest Ms. Townsend for this offense, so he is not entitled to qualified immunity.

As previously discussed, the Court need not consider whether arguable probable cause existed for any other offense, since Officer Wolfe's only argument in this regard is that "a reasonable officer could have concluded, even mistakenly, that there was probable cause to arrest Townsend *for failing to provide the requested identification*." [DE 44 p. 11, 33 p. 11] (emphasis

added). Even if the defendants had raised the point, however, the Court could not find that arguable probable cause existed to arrest Ms. Townsend for any other offense. Officer Wolfe's subjective suspicion that "it was possible that Townsend was more physically involved in the altercation than she was willing to admit" may have justified further investigation, but does not provide probable cause, either actual or arguable, to believe that Townsend committed a criminal offense. [DE 32-2]. *See Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013) (holding that arguable probable cause did not exist to arrest an individual found at the scene of an arson, since the "question is not whether the fire was arson but *whether it was reasonable to arrest Williams* for arson"). Ms. Howard and Ms. Calligan both expressly identified each other as their attackers, and they both wanted to place the other under citizen's arrest. Neither suggested likewise for Ms. Townsend or said that Ms. Townsend attacked or fought with them. Ms. Howard's bare statement that Ms. Townsend "witnessed the event and pulled her off of Calligan" falls well short of giving Officer Wolfe arguable probable cause for Ms. Townsend's arrest. [DE 39-4].

Therefore, the Court finds that Ms. Townsend has met her burden of showing that Officer Wolfe arrested her without probable cause, and that no reasonable officer would have believed that probable cause existed under the circumstances. Accordingly, the motion for summary judgment is DENIED as to Officer Wolfe, and Ms. Townsend can proceed on her claim under § 1983 that Officer Wolfe violated her Fourth Amendment rights.

B.     **Sergeant Strausborger and Officer Addison**

Ms. Townsend argues that Sergeant Strausborger and Officer Addison are liable for her unlawful arrest as well. To be held personally liable under § 1983, the defendant must have been personally involved in the alleged constitutional violation. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982); *see Hildebrandt*

*v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir.1994))). "An official satisfies the personal responsibility requirement of section 1983 if [he] acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Crowder*, 687 F.2d at 1005.

Ms. Townsend pursues two theories for holding these officers liable for her unlawful arrest. The first is that the officers knew that her arrest was unlawful and that they failed to intervene. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that a citizen has been unjustifiably arrested . . . *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The record here shows that Sergeant Strausborger and Officer Addison had only limited contact with Officer Wolfe and Ms. Townsend, so Ms. Townsend seeks to invoke the collective knowledge doctrine in order to impute Officer Wolfe's knowledge of the lack of probable cause to the other officers. Her reliance on this doctrine is misplaced, however.

The collective knowledge doctrine allows the knowledge of one officer to be imputed to other officers in certain circumstances in order to find that probable cause existed, but this doctrine is justified by the idea that an officer need not have personal knowledge of the underlying facts that give rise to probable cause in order to make an arrest. *United States v. Lyons*, 733 F.3d 777, 783 n.1 (7th Cir. 2013); *United States v. Harris*, 585 F.3d 394, 400 (7th

Cir. 2009). Section 1983, however, *does* require personal knowledge (or at least a reason to know) that an arrest is unlawful before an officer can be liable for an arrest they did not make, *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), so the collective knowledge doctrine is inapplicable in this context. In addition, the Seventh Circuit has held in similar circumstances that the mere fact that officers communicated during an arrest does not mean that the non-arresting officer had sufficient knowledge of the facts to believe that probable cause did not exist. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001–02 (7th Cir. 2003) (holding that even though the police chief spoke to the arresting officer by phone immediately before the unlawful arrest, the facts did not support a conclusion that the chief had knowledge that the arrest was unlawful).

Without imputing Officer Wolfe's knowledge to Sergeant Strausborger and Officer Addison, there is too little evidence in the record to support a conclusion that either of them knew or had reason to know that Ms. Townsend's arrest was unlawful. Officer Addison was at the scene and interviewed Ms. Calligan, one of the combatants, but there is no indication that he interviewed Ms. Howard or Ms. Townsend, or that he had any personal knowledge of the facts giving rise to Ms. Townsend's arrest. [DE 32-4]. As to Sergeant Strausborger, he did not personally interview any of the people involved, and his knowledge of the events was based entirely on what Officer Wolfe relayed to him. [DE 32-2, 32-3, 39-4]. Officer Wolfe's statement that he "explained the situation" to Sergeant Strausborger is not specific enough to conclude that he imparted sufficient facts to Sergeant Strausborger for him to know that there was no probable cause, and Ms. Townsend has not submitted any deposition testimony from the officers or statements from any witnesses to the conversation indicating what facts the officers discussed. Ms. Townsend bears the burden of coming forward with specific facts in the record to establish a

triable issue of fact, and speculation that the officers may have discussed the situation in more depth than the record reflects is not sufficient to withstand summary judgment. *Morfin*, 349 F.3d at 1002. Thus, the Court cannot conclude that either officer is liable under § 1983 on this basis.

Ms. Townsend's second theory is that Sergeant Strausborger and Officer Addison directed or caused her unlawful arrest, but this theory is unavailing as well. First, Sergeant Strausborger arrived at the scene after Officer Wolfe placed Ms. Townsend under arrest, so Sergeant Strausborger could not have directed her arrest.[2] [DE 39-1 ¶¶ 11, 12; DE 39-4 p.3]. In addition, the record does not reflect that Sergeant Strausborger told Officer Wolfe that he should keep Ms. Townsend under arrest or that probable cause existed for her arrest, he simply summarized the failure-to-identify offense for Officer Wolfe, so Sergeant Strausborger cannot be held liable for prolonging Ms. Townsend's arrest.[3] At worst, he could have learned of the illegality of the arrest and failed to intervene, but as discussed above, the record does not support such a theory.

As to Officer Addison, there is no indication in the record that he played any role in Ms. Townsend's arrest. Ms. Townsend's only argument in this regard is that the jury could draw an adverse inference on this question based on the defendants' supposed destruction of evidence, namely a report of the incident by Officer Addison. Officer Wolfe's report says to "see Officer

---

[2] Though Officer Wolfe had not yet placed Ms. Townsend in the squad car by that time, both Officer Wolfe's report and Ms. Townsend's affidavit state that Officer Wolfe told Ms. Townsend that he was placing her under arrest and placed her in handcuffs prior to Officer Wolfe's discussion with Sergeant Strausborger. [DE 39-1 ¶¶ 11, 12; DE 39-4 p.3].

[3] The defendants are incorrect in dismissing the possibility that an officer could be liable for providing advice to an arresting officer, as even a prosecutor can face liability under § 1983 for giving legal advice to police. *Burns v. Reed*, 500 U.S. 478 (1991). However, Ms. Townsend does not specifically advance that theory, and Sergeant Strausborger's statement to Officer Wolfe— that "if the individual was involved in an altercation, that individual could be arrested for refusing to provide information to Officer Wolfe"—is well within the range of how a reasonable officer could describe this offense under the circumstances.

Addison's report for further information" regarding Officer Addison's conversation with Ms. Calligan. The defendants never produced such a report, and contend that it never existed. [DE 39-4, 39-6]. However, Ms. Townsend's suggestion, based only on these facts, that the report was actually created, contained adverse information, and was intentionally destroyed to prevent its discovery is pure speculation. Aside from the passing reference in Officer Wolfe's report, there is no indication that Officer Addison actually wrote a report, and Ms. Townsend has provided absolutely no basis from which the Court could conclude that the report, if it did exist, was destroyed in bad faith. An inference against either of the officers on this basis is thus unjustified, so Ms. Townsend has not shown that either of them caused her unlawful arrest.

Therefore, the Court finds that the evidence in the record, even when viewed in the light most favorable to Ms. Townsend, would not permit a reasonable jury to find that either Sergeant Strausborger or Officer Addison had the requisite personal involvement in Ms. Townsend's unlawful arrest to face liability under § 1983. The defendants' motion for summary judgment is accordingly GRANTED as to Sergeant Strausborger and Officer Addison.

C.  **The City of Fort Wayne**

Ms. Townsend finally argues that the City of Fort Wayne is liable under Indiana law for false arrest and false imprisonment on account of Officer Wolfe's conduct. "Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). Similarly, false arrest occurs when an individual is arrested "in the absence of probable cause." *Id.* Both claims are thus based on an arrest without probable cause, and that inquiry is the same under Indiana law as under federal law. *Id.*; *Risner v. City of Crown Point*, No. 2:08-cv-100, 2010 WL 3782210, at * (N.D. Ind. Sept. 21, 2010) ("Indiana law parallels federal law for false arrest and false imprisonment claims. Summary judgment is appropriate

where the record as a whole reflects the existence of probable cause."). Here, it is undisputed that the City of Fort Wayne is responsible for the acts of the officers as its employees, and the Court determined above that a reasonable fact-finder could find that Ms. Townsend was arrested without probable cause, so she can proceed past summary judgment on her false arrest and false imprisonment claims against the City of Fort Wayne.

Finally, the defendants moved to dismiss any claims for negligent or intentional infliction of emotional distress. However, while the complaint alleges that Ms. Townsend "suffered extreme emotional distress," Ms. Townsend confirmed in her response brief this was merely in reference to her damages and that she was not asserting these as standalone claims. Thus, there is no need to grant summary judgment against these claims, as they were not asserted in the first place, so the motion for summary judgment is DENIED as to the City of Fort Wayne.

## IV. MOTION TO STRIKE PLAINTIFF'S RULE 26(a)(1) DISCLOSURE

Finally, the defendants have moved to strike Ms. Townsend's supplemental Rule 26(a)(1) disclosure as untimely. Rule 26(a)(1) initial disclosures were due by December 20, 2012, and the discovery deadline was June 19, 2013 [DE 10]. Ms. Townsend served her initial disclosures as required, but supplemented them on November 7, 2013, after discovery closed and after the defendants filed their motion for summary judgment, to include two maintenance men from the apartment complex as potential witnesses. [DE 41-1]. The defendants have moved to strike this supplemental disclosure. [DE 41].

Rule 26(a)(1) requires each party to disclose to the opposing party "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). These disclosures must be made within fourteen days of the Rule 26(f)

16

conference unless otherwise ordered, and parties must additionally supplement these disclosures in a timely manner throughout discovery. Fed. R. Civ. P. 26(a)(1)(C), (e)(1)(A). Where a party fails to comply with these obligations, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In considering whether a violation was justified or harmless, a court may consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

The Court cannot conclude that the delay in disclosing these witnesses was justified. A party has an obligation to diligently pursue its claim and gather any evidence within the discovery period, and while Ms. Townsend may have disclosed the identity of these two witnesses immediately upon learning of them, she has provided no reason why she could not have identified these witnesses during discovery. However, the Court declines to strike the supplemental disclosure, as its untimely disclosure is sufficiently harmless in these circumstances. Ms. Townsend stated in her deposition that two maintenance men helped her break up the fight, [DE 32-1 p. 9], so the defendants were at least on notice that these individuals may have discoverable information. In addition, though Ms. Townsend served the supplemental disclosure after the defendants filed their motion for summary judgment, she did not rely on any statements from these potential witnesses in opposing summary judgment. Thus, the untimely disclosure of these witnesses did not prejudice the defendants in replying to their motion for summary judgment or otherwise delay briefing on the motion. Finally, any prejudice can be cured by permitting the defendants to conduct limited discovery as to these witnesses prior to

trial, as a trial date has not yet been set. If the defendants so desire, they may request leave to reopen discovery for that limited purpose.

The Court therefore declines to strike Ms. Townsend's supplemental Rule 26(a)(1) disclosure, so the defendants' motion is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [DE 32] is GRANTED as to Sergeant Strausborger and Officer Addison, and DENIED as to Officer Wolfe and the City of Fort Wayne. Ms. Townsend's § 1983 claim against Officer Wolfe for false arrest, and her false arrest and false imprisonment claims against the City of Fort Wayne under state law remain at issue in this matter. Defendants' Motion to Strike Plaintiff's Supplemental Initial Disclosures [DE 41] is DENIED.

SO ORDERED.

ENTERED: June 16, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court